525-0414. I've got Mr. Roberts and Mr. Shaffer. Not at all. Always good to see some of my local folks. Mr. Roberts, you're ready to proceed? Great. I'm never going to be good. Come on up and go right ahead. May it please the court. I'm Attorney brief procedural history in this case. This case arises out of a divorce in Williamson County. In April of 2024, there was a marital settlement agreement that was entered into between Dr. Jones and his wife, Jeanne. That marital settlement agreement reserved the division of certain assets, including investment accounts. Although it did require Dr. Jones, there was a paragraph, paragraph F specifically, that stated that attorney's fees were to be paid before the division of any property occurred. In September, specifically September 9th of 2024, the Honorable Kerry Gill entered an order retroactively freezing all of the property until August 4th of 2024. That order, again, was entered by Judge Gill on September 9th and that's very important in this case. Then in October of 2024, there was a marital settlement agreement that awarded those accounts to Dr. Jones' ex-wife, Jeanne. Subsequently, there was a rule to show cause filed by saying that Dr. Jones had improperly and contemptuously removed $139,000 from those accounts after the order was frozen on September 9th. Well, after the Dr. Jones removed about $139,000 from those accounts in order to pay the attorney's fees as was set forth in the original marital settlement agreement in April. I just want to make sure I have my dates correct. So the trial court found that these withdrawals occurred between August 4 and September 8th. Correct. I thought you said September 12th. September 9th. Okay, I thought you said the 12th. The withdrawals were made by Dr. Jones between August 5th and August 12th. I may have said September and I apologize. Oh, August 5th and August 12th. Correct. And the fees order was entered September 9th. Correct. Okay. But it retroactively froze the accounts back to August 4th. And that was because there was some discussion during that initial period about holding those funds? I wasn't the attorney of record, Judge, and the record's not really clear that I wasn't Mr. Jones's attorney during the original divorce proceeding. So it's my understanding, though, that it became aware that he was taking some funds out of those accounts, which is why on September 9th the court retroactively froze the accounts back to August 4th.  But again, the record isn't really clear on that for me. Subsequently then at the contempt hearing, the Honorable Judge Green found Dr. Jones in contempt for the removal of those funds after the freeze order was entered, retroactively freezing the account. It's our position that, and it's not really clear because what was filed on behalf of GDN was just a petition for contempt, a petition for rule of show cause, whether this was a criminal contempt or civil contempt proceeding. So in our brief we addressed both of those issues. It's our position that we believe it's most likely a criminal contempt proceeding, indirect criminal contempt, because the sanction that was issued by the court was an order for Dr. Jones to reimburse that $139,000. If in fact it was a criminal contempt order, Judge Green violated Dr. Jones's due process and he failed to advise him of his rights under the criminal contempt procedures. He has a right to a jury, he has a right to notice, he has a right, specifically the right to jury. So for those reasons we believe that the order for contempt cannot stand as a criminal order. With regard to it being a civil order, it's an indirect civil contempt, it's impossible for Dr. Jones to have violated an order that was not in place at the time he withdrew the funds. Again, he withdrew the funds between August 5th and August 12th, 2024. The order that said the accounts were frozen wasn't entered until September 9th. So it's impossible, it's a physical impossibility for him to have been in contempt of court for an order that was not in existence. Now, we argued in the briefs that in the subsequent Supplemental Marital Settlement Agreement, there was some language in there that the parties averred, that there had been no withdrawals from the funds, and that somehow he was on notice and that made him in contempt. And we addressed that in our reply brief. That's not a contempt issue. The remedy for that would have been for Ms. Jones and her counsel to file to set aside the judgment not for contempt. Again, he can't be in contempt of an order that wasn't in place at the time he took the action. I think that's fairly black-letter law. There has to be an order of court requiring a party to do or not do something for that party to willfully violate the order. And I'm struggling to see what that order was in this case where the conduct occurred prior to the entry of the freeze order. That is your position. Correct, and that's why we're here. I mean, it's our position that this is a pretty straightforward case. It's pretty clear that Dr. Jones couldn't have violated an order because there was no order in place. And with that, I'm going to cease. If there's no questions, I'm going to cede the remainder of my time. No further questions, thank you. You obviously have your time for a vote. Thank you. Thank you, Counselor. All right. This is the Police's Report. My name is Paul J. Schaefer. My middle initial is J. I go by my middle name, J, so those of you that heard me, I apologize for creating that confusion and it's been following me around for over 30 years. Rich Heron changed my name in high school and when he was a coach at SIU and the newspapers picked it up and J is not even my name according to my mother, but that's what it became. I represent Gene Jones. I have an advantage over Mr. Roberts and I hate being in this situation. The problem is that Mr. Roberts, as he said, was not around when this was going on. The reality of the situation is that Dr. Jones was the sole breadwinner making over half a million dollars a year. Gene was a stay-at-home mother. He was in complete control of the financial picture. He earned all the money. He spent all the money. He invested all the money and they had a lot of money. The court did not enter any orders. Technically, they did, but the court did not enter the orders. These were agreements. Dr. Jones and Mrs. Jones reached an agreement, a settlement, that the court then adopted as its order. There wasn't a hearing where Dr. Jones lost and the court ruled against him. He reached an agreement where he said, I hereby agree to freeze these accounts as of that day in the past. That was his agreement that he reached in open court and he signed it and he approved and the court read it right into the record. Then, because I was skeptical of what was going on here, what you have one guy who's making a half a million bucks a year and keeping it and he's using two years ago's funds from their savings to pay the taxes on the half a million he's earning now so he can deplete how much he's going to get in the divorce while he keeps all the money he's earning now. So, we filed a motion to freeze the accounts. Now, when we freeze the accounts, what happened that scared him to death? Judge Gill, in an order on September 9th, adopting our agreement, following the agreement reached, all investment and retirement accounts of the parties are frozen as of August 4th. That was Dr. Jones' agreement of September 9th. But what causes panic is where she says, the court reserves ruling as to whether those accounts have been depleted and also reserves ruling as to whether or not he'll have to refund and replenish the accounts. So, we go on down the road and what happens? The parties reach a final settlement. But because they won't address the issue of how much money, if any, has been spent from these accounts, did they agree to be frozen? And because I am suspicious in my nature, we insisted on a clause in the final settlement, moral settlement agreement that's adopted into the court's judgment and becomes a part of the court's order that said, I avow and avert that no funds have been withdrawn from those accounts that were frozen as of August 4th, which Dr. Jones signs and he agrees. Now, if he had told the truth, what it was is a long con. He didn't think anybody would ever figure it out. Here's a screenshot. Here's how much money we got. Here's a screenshot. Here's how much money we got. He runs this long con, but I smelled a rat, and so after two years of saying, can you please give us a statement of how much money you had when this case started and this was frozen, and him saying, no, I sent a statement, and we catch him having spent $138,000. He has agreed he didn't do twice in a row. Now, let me ask you, do you agree that this is an indirect civil contempt order, not a criminal contempt order? Oh, absolutely. And my question is, if we find that that order, having been entered by the court on September 9th, adopting the party's earlier agreement, making it retroactive, does not constitute an order for which the father or the husband could have willfully violated, your claim still has other recourse. So I thought about filing a fraud claim because then we could get punitive damages. I thought about filing a motion to enforce. It's an agreement, correct? It's an agreement, but what we skipped over is they want to pigeonhole it into that order that didn't exist. There's an order that comes later. The court entered a judgment adopting the agreement of the parties and converting that part of the settlement agreement and adopting it into the judgment. That's the one they're in violation of. I have vowed and averred that I have made no withdrawals from those accounts. There's a paragraph in that final order, that final judgment. And the court has an inherent authority to enforce its rules. If we're going to let people look you in the eye and lie in open court and then get things into the judgments that they think suits them, that undermines the public policy that's codified in the Marital Settlement Act that encourages settlements. If I hadn't been clever enough to put a paragraph in there saying that he promises he didn't take the money, where would we be? I don't know where we'd be. But this is like an apple pie. If you look at it two hours ago and you've got sugar and apples and butter all sitting around the counter, that's not a pie. But if you look at it two hours later and it's all combined, now it's a pie. What we have here is a guy who swore and reached an agreement that I didn't take any money. That was a lie. Then he swears under oath that he signs a marital settlement agreement that's incorporated in the judgment that I didn't take any money. That was a lie. He knew there were both lies when he did. We would be incredibly undermining the public policy that encourages settlements in the Marital Family Act if we said you can lie as long as you don't get caught. Let's see. The reality here is that there is no punishment. This guy is literally better off for having run this con than if he had done what the court ordered him to do. He got to keep $138,000 that he earned that he was supposed to have given her for 31 months. Now, if you don't even count what the stock market did, and you just look at how your money markets or treasury bills were earning, he's $20,000-something bucks to the good. The judge didn't order him to surrender the profit, the gain, the interest. There's no penalty. Civil contempt says how do you cure it? You put the money back. That's all they ordered him to do. They said just put the money back that you took and you lied about it. They're arguing about penalty contempt. Not only does he not need the keys to the jail cell, there's no jail cell because there's no penalty over and above making the agreement that you reached in writing whole. You reached an agreement, make it whole, that's the penalty. There's no sanction. All you're doing is what you agreed to do in the first place. You don't need the keys to the jail cell because the judge was worried. There's been a lot of change in these sanctions things. I don't sit at anything and claim that I understand every nuance of every aspect of sanctions anymore. It's more complicated than I thought it used to be. But the court here was very cognizant of this concern and so didn't give the guy a penalty. He could have said disgorge the 9% interest under the statute. He could have said do all these things. Didn't do any sanctions at all. Just put the money back. That's all. That's the purge order. He has the keys to his jail cell. You put the money back, you're home free. And I think you already did your brief that Mr. Jones didn't object to the procedures taken throughout on this issue. Filed no response. Agreed the court could rule on the sanctions. So he had his quote-unquote day in court. Well, that was my next line out of here. I don't know that it's waiver, although there's a pretty good argument that it's waiver. But if somebody files a rule to show cause and you don't file any response, how do you complain about it later down the road? The issue of whether this was criminal or civil contempt was never raised before the trial court. The issue that the trial court was doing something wrong, inappropriate, by not affording him certain rights, never raised before the trial court. And so then we filed a petition for sanctions. And they literally say, as it says in the record, just go ahead and rule, judge. They don't say you can't do this. They don't say it's wrong, that it's criminal. They just say, hey, that's 508 attorney's fees. Now, I think the real reason is Mr. Robertson has been doing this a lot longer than I have. 508 is a shallow court statute. If I'm a judge in a trial court and I'm enforcing an order of mine that the other side has ignored, 508 says you shall award attorney's fees. It's a shallow court statute. So it's not like there's a lot of argument you're going to make. You're just going to waste a lot more time and money getting there. There's a third small component to the pie, the brown sugar, your sprinkle on top, whatever, is that as you read through the court's docket entries, the court and the parties clearly, these ingredients going into this final medal sale grant that the court adopted as part of the judgment, the court ordered those payments that Dr. Jones made paid from an account that were not frozen. It's point blank. It says right in there, pay this money from an account that's not frozen. That in itself is another order. It's a little order, but it's still an order. Of course, docket entries are well known to be orders. And so if I make a docket entry that says pay the attorney's fees from an account that's not frozen and you swear that you didn't and you swear that you haven't taken any money out of there and then you get caught, the court has to have the ability to enforce all those orders or why make them? I've told a million trial judges, judge, I feel guilty asking you for this again because I think it is silly that I ask a court to enter an order that says, no, I will admit what I said in that last order. This order is really, really saying do it. The last one was just kind of do it. I think that if the court enters an order, people should do what the order says. If you don't, there's got to be consequences. And what was the date of that order? I think it was September 9th, Your Honor. I apologize. I've been in this case for five and a half years. I don't have it memorized every day as well as I should. Was it before September 9th? I don't know. I think it's the same docket entry, isn't it, Judge? Let me see if I can find it here. In terms of how the attorney's fees were to be paid? I don't think so. But it goes to show that the police thought they were frozen and that they had agreed they would be frozen. So it likely is tied back to that agreement from August 4th. Let me tell you, I assume Mr. Roberts thought they were frozen. I mean, I assume that my attorneys, everybody that was doing this all along, wouldn't have gone in and tried to intentionally commit a fraud upon the court, knowing that they were saying something that wasn't true. I assume everybody thought that. The interesting thing, and I didn't actually know it this well, but if you're going to avow on a verdict, Mary Webster says that to avow something is to declare or state acknowledging openly and boldly, publicly, in the face of disbelief that something is true. In hindsight, that is exactly why we put that language in there. We wanted somebody to commit, as a verb says, to taking a position of a formal declaration. You're prepared to prove something is true. We put that he avowed in a verb that there had been no withdrawals in the very final document that the court incorporated in the judgment that became the final order that closed that case. And the purpose of the order that Judge Green entered is to just make Mrs. Jones whole. It doesn't punish him at all. Just give the money back that you agreed you weren't going to take and you agreed you were good to her. And by complying with the terms of the underlying order, you're home free. That's what Judge Green should have done. That's what he did do, and there was no punishment. There are several cases. I think the Pavlovich case is right on point and explains the law as well as any. And I just don't think that this case, if the court was right when talking to Mr. Roberts, this is a very simple case. You have a guy who reached an agreement that was incorporated into an order. The fact that it was frozen to a date prior is a red herring because that's what they agreed to. They agreed to use that date to incorporate it in an order that was entered into today, but even though they knew, that was a lie. But if I agree this is an order today, I'm bound by today's order, or I shouldn't have agreed to. He's not fined or penalized in any way, but the acts were clearly contentious because he swore he hadn't done something, he induced a settlement, he got the benefit of it, and then when it became part of the court's final order, he's in violation of that one too. There's really about three orders that were violated along the line, and it's not any one order in and of itself. It's all the orders when taken as a whole that create the problem. I think that it is key that these issues weren't raised. Do y'all want me to move, or is that what you're supposed to put? No, you have more time.  Has the court got any questions for me? No further questions. Okay. I do think it's important to point out one last thing, to stress the point, Judge Gill did not enter a retroactive order as Mr. Roberts argued and implied. The parties reached an agreement and asked the court to enter an order on the 9th that the court entered. Yes, a component of the party's agreement was that the account was frozen on a prior date, but that was the agreement of the party that they presented to the court to include in the order. If you can intentionally mislead a judge and get away with it, and then complain that the judge shouldn't have entered that order because you misled him, we're going to have bigger problems. Anything else? That's all I've got. All right. Thank you, counsel. Go right ahead. Very briefly, Your Honor. What Mr. Schaffer says is inaccurate. Mr. Schaffer argues there's no penalty, there's no sanction, there's nothing against Dr. Jones. There is. What everybody's failed to comprehend in this case or look at in this case, including Judge Green, is the original marital settlement agreement entered in April of 2024. It clearly says that attorney's fees are to be paid from the marital assets before the marital assets are divided. These marital assets included these accounts, these accounts which were frozen. It's undisputed in the record that the $139,000 that Dr. Jones withdrew between August 5th and August 12th, he used to pay attorney's fees. In fact, I believe Mr. Schaffer received $100,000 of that money. So now we want to go back to court and say, hey, we want him to pay back this $139,000 so that his ex-wife gets it all. That totally makes the language in this original marital settlement agreement, that makes it nonsensical because it's clear from paragraph F of that that he's to pay attorney's fees from those assets. That's what he did. He followed that order. And Mr. Schaffer doesn't dispute that. Nobody disputes that. But we just want to pretend paragraph F isn't there. And I don't, Dr. Jones can't be in contempt for doing something, and he is sanctioned, because essentially Ms. Jones now gets an extra $139,000. That's a penalty. That's a huge penalty to Dr. Jones. And that's what this case has been about. It's never enough for her. She wants more and more and more and more and more. And to answer Justice Booley's question about the waiver or whatever, my experience is in doing this for over 20 years, I don't do it at the appellate court level, of course, but I do it at the trial court level, is when a rule to show cause is issued and a petition is filed, there's no requirement to file an answer. Because what the rule to show cause, what the order says is, defendant, you show up here on this day in front of the court and explain why you shouldn't be found in contempt. That's what Dr. Jones did. He's not required to file a response. He didn't waive anything by filing a response. He showed up and said, I'm not in contempt. These orders didn't exist when I withdrew the funds. And when I withdrew the funds, I paid attorney's fees, which was what I was ordered to do, was pay attorney's fees from the assets before they were divided. So I'm not in contempt. Judge Green disagreed, which is why we're here today. Thank you. Any final questions? No further questions. Thank you, Counselor. Thank you. We appreciate your arguments. Obviously, we'll take the matter under advisement and we will issue an order in due course.